# EXHIBIT 1

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is made and entered into by and between Orlando Ceron ("Plaintiff") and T & T Scrap, LLC ("Defendant").

WHEREAS, Plaintiff was employed at various times from on or about August 2007 through and including the Fall/Winter of 2015;

WHEREAS, on or about January 6, 2016, Plaintiff filed a civil action against Defendant in the United States District Court, Eastern District of New York, where it was assigned civil action number 1:16-cv-00063 (ARR) (JO) (hereinafter, the "Action"). The Action claimed, among other things, that Defendant violated various wage and hour laws set forth by the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), including failing to properly compensate Plaintiff and others similarly situated with overtime wages, minimum wages, and spread of hours premium.

WHEREAS, Defendant denies all allegations of wrongdoing made by Plaintiff;

WHEREAS, Defendant and Plaintiff (collectively referred to as the "Parties") desire to resolve and settle the Action in an amicable manner without the expense and aggravation of continued litigation;

NOW, THEREFORE, with the intent to be legally bound, and for good and valuable consideration, the sufficiency and receipt of which the Parties acknowledge, the Parties agree as follows:

1. **Consideration**: As full settlement and final satisfaction of any and all claims for attorneys' fees and costs incurred on behalf of Plaintiff in the prosecution of this Action, and in consideration for the agreements and obligations set forth herein, Defendant shall pay Plaintiff a total of Thirty Thousand Dollars ($30,000) (hereinafter, the "Settlement Payment"). The Settlement Payment is intended to compensate Plaintiff as follows:

    (a) the gross amount of Nine Thousand Seven Hundred Seventy-Three Dollars and Fifty Cents ($9,773.50) payable to "Orlando Ceron," less normal and ordinary payroll deductions required by law, for which the Company will issue Orlando Ceron an IRS Form W-2, representing payment for any and all alleged unpaid wages (referred to below as "Ceron W2 Payment");

    (b) the gross amount of Nine Thousand Seven Hundred Seventy-Three Dollars and Fifty Cents ($9,773.50) payable to "Orlando Ceron," which represents payment for alleged liquidated damages and penalties incurred by Plaintiff under the New York Labor Law and the FLSA, for which the Company will issue an IRS Form 1099-MISC in accordance with IRS regulations (referred to below as "Ceron 1099 Payment");

    (c) the gross amount of Ten Thousand Four Hundred Fifty-Three Dollars ($10,453.00) payable to "Park & Sim Law Group LLP", which represents payment for all of Plaintiff's attorneys' fees, costs and expenses incurred in this Action, whether those fees and costs were incurred by Park & Sim Global Law Group LLP or any other law firm or attorney, for

1 of 6

Orlando Ceron's Initials: *O. C*

which the Company will issue the applicable IRS Form 1099-MISC in accordance with IRS regulations (referred to below as "Attorney Payment").

The Company will remit the Settlement Payment on a monthly basis over a six month period. All payments shall be mailed to Park & Sim Global Law Group LLP on or before the due date for such payment. The first payment shall be mailed on the tenth day following the Court's dismissal of the Action with prejudice. Each succeeding payment shall be mailed no later than 30 days after each preceding payment was due and shall continue until all payments have been made. The Company shall submit the necessary documentation to the Court to dismiss the Action with prejudice within two business days following Defendants' Counsel receipt of (i) the Agreement signed by Plaintiff and Plaintiff's counsel, (ii) a signed copy of a Federal W-9 Form from Park & Sim Global Law Group LLP, and a signed copy of a Federal W-9 Form from Plaintiff; (iii) a copy of the Federal W-4 Form completed and signed by Plaintiff.

The precise amount and allocation of each payment is as follows:

- 1st payment:   $2,880.33 – Ceron 1099 Payment
  $2,119.67 – Attorney Payment
- 2nd payment:   $3,333.33 – Ceron 1099 Payment
  $1,666.67 – Attorney Payment
- 3rd payment:   $3,333.33 – Ceron 1099 Payment
  $1,666.67 – Attorney Payment
- 4th payment:   $226.51 – Ceron 1099 Payment
  $3,106.82 – Ceron W2 Payment
  $1,666.67 – Attorney Payment
- 5th payment:   $3,333.34 – Ceron W2 Payment
  $1,666.66 – Attorney Payment
- 6th payment:   $3,333.34 – Ceron W2 Payment
  $1,666.66 – Attorney Payment

Plaintiff acknowledges that the foregoing payments fully compensate him for all Released Claims, as defined in paragraph 2 below, including all his claims arising out of, alleged in, or related to the facts and transactions alleged in the Action, as well as attorney's fees, costs, interest and/or other expenses incurred in the prosecution of this Action, and that Plaintiff shall not make any further claim against Defendants for attorney's fees, costs, interest or any other expenses of any kind which may have been incurred. Plaintiff acknowledges that the Settlement Payment fully compensate him as required under the FLSA and NYLL, and all other federal, state, and local laws, ordinances, rules, regulations or orders. Accordingly, Plaintiff covenants and agrees not to seek, accept, recover or receive any back pay, liquidated damages, other damages or any other form of relief based on any Wage-Related Claims, as defined in paragraph 2, which may arise out of, or in connection with any other individual, class or any administrative remedies pursued by any federal, state or local governmental agency against Defendant

Defendant agrees to execute the confession of judgment, attached hereto as Exhibit 1. In the unlikely event Plaintiff's counsel does not receive all amounts due pursuant to this Agreement and Defendant fails to cure any such deficiency within 10 days' notice by Plaintiff's

Orlando Ceron's Initials: *O.C*

counsel, Plaintiff's counsel may enforce the judgment in a court of law. Any confession of judgment shall be reduced by all amounts previously remitted as a result of this Agreement.

2. **Release of All Wage and Hour-Related Claims**: (a) Plaintiff, individually and on behalf of himself and his heirs, executors, testators, representatives, agents, successors and assigns, freely and irrevocably relinquishes, releases, and waives all possible complaints, causes of action, liabilities, obligations, demands, contract rights, and claims against Defendant, including any parent companies, subsidiaries, divisions, insurers, related or affiliated companies, predecessors, successors or assigns, as well as its or their current or former employees, agents, shareholders, officers, and directors, including Tim Fulton (collectively, the "Releasees"), that may have arisen from the beginning of time to the date of his signature on this Agreement. The foregoing release encompasses only wage-related claims, whether or not those claims are brought pursuant to the Fair Labor Standards Act, the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*, New York Labor Law, New York State Laws, the New York Whistleblower Statute, the New York State Constitution, and all other federal, state, and local laws, ordinances, rules, regulations or orders, all as may have been amended from time to time (collectively, "Wage-Related Claims"). Wage-Related Claims is also defined to encompass those claims alleged in the Lawsuit or those claims that could have been alleged; any retaliation claims, under the FLSA or other applicable law or rule, alleging that the Defendant's act(s) or omission(s) constituted retaliation against him for complaining about his wages or for asserting wage-related claims; and all derivatives of Wage-Related-Claims, which include, but are not limited to, claims for wage statement and/or notice requirements, attorneys' fees, expenses and costs; liquidated damages; penalties; and interest. This waiver and release includes all Wage-Related Claims now known to Plaintiff, as well as all possible Wage-Related Claims that are not now known to Plaintiff. (The above shall be collectively referred to as "Released Claims").

(b) Plaintiff understands that nothing in this Agreement shall be construed to prohibit him from filing a charge or complaint with, or participating in any investigation or proceeding conducted by, the Equal Employment Opportunity Commission, National Labor Relations Board, and/or any other federal, state or local agency charged with the enforcement of any laws. Notwithstanding the foregoing, Plaintiff waives any and all rights to recover monetary damages or other recovery in any charge, compliant, or lawsuit filed by him or by anyone else on his behalf based on Released Claims that arose prior to the date he signs this Agreement. Plaintiff further understands that this Agreement does not release: (i) any claim for vested benefits under any ERISA plan; (ii) any non Wage-Related Claims, as defined above; (iii) any claim that this Agreement has been breached; or (iv) any claim that cannot be released by private agreement, including, but not limited to, claims for benefits for occupational injury or illness under the workers' compensation law or claims for unemployment insurance benefits.

3. **Nonadmission of Wrongdoing**: By entering into this Agreement, Defendant does not admit any liability or wrongdoing whatsoever, and expressly denies the same; it being expressly understood and agreed that this Agreement is not intended and shall not be deemed to constitute an admission that any person, company or entity was liable to any other person, company or entity or engaged in any wrongdoing or misconduct whatsoever and, in fact, Defendant expressly contends it has complied with applicable state and federal wage related law and requirements at all times; it is expressly understood and agreed by the Parties that this Agreement is being entered into by Defendant solely for the purpose of avoiding the costs and

disruption of ongoing litigation, and this Agreement shall be inadmissible in any proceeding, except as necessary to approve, interpret, or enforce this Agreement.

4. **Submission To The Federal Court For Approval And Dismissal With Prejudice**: The Parties intend for Plaintiff to waive any and all Wage-Related Claims, including claims under the FLSA and NYLL, he may have or might have had against the Defendants from the beginning of time up to and including the date the District Court dismisses the Action with prejudice. The Parties further agree to the following:

(a) Within two business days of the execution of this Agreement and Defendant's counsel's receipt of the documents identified in paragraph 1, Defendant will file a joint letter to the Court requesting a telephonic fairness hearing before Magistrate Judge Orenstein;

(b) In the event the District Court requires additional documentation or information, the Parties agree to take all steps necessary to ensure this Action is dismissed with prejudice.

(c) In the event this Action is not dismissed **WITH PREJUDICE** by the District Court following the Parties' efforts in paragraph 4(b), this Agreement shall be null and void and no payments shall be made pursuant to paragraph 1 of the Agreement. The case shall be restored to the Court's calendar for discovery and trial; and

(d) The Parties agree the Court shall retain jurisdiction to enforce the terms of the Agreement unless specifically set forth otherwise.

5. **No Promises or Representations**: Neither Defendant nor anyone on behalf of Defendant made any promises to Plaintiff other than those in this Agreement. Plaintiff acknowledges that should he later discover facts different form, or in addition to, those he now knows or believes to be true with respect to his employment, the separation of his employment (including the reasons for such separation), the circumstances of his entering into the Agreement, and/or the claims released in this Agreement, he agrees that the release set forth in this Agreement shall be and remain in effect in all respects as a complete and general release as to all maters released, notwithstanding any such different or additional facts. Further, Plaintiff acknowledges that he has not relied on any representations or statements made by Defendant or anyone on behalf of Defendant, in considering this Agreement or deciding to enter into this Agreement.

6. **Changes to the Agreement**: This Agreement may not be changed unless the changes are in writing and signed by all of the Parties or their designees.

7. **Severability**: The Parties agree that in the event any provision of this Agreement is judicially declared to be invalid or unenforceable, only such provision or provisions shall be invalid or unenforceable without invalidating or rendering unenforceable the remaining provisions hereof.

8. **Governing Law**: This Agreement, and all of its terms, shall be interpreted, enforced and governed under the laws of the State of New York.

Orlando Ceron's Initials: *O.C*

9. **Assignment of Claims**: Plaintiff hereby represents and warrants that he has not assigned or transferred or purported to assign or transfer to anyone any claim, action or cause of action based upon, arising out of, or connected in any way with any of the matters released herein.

10. **Voluntary Agreement**: Plaintiff understands and agrees that:

(a) He is not suffering from any impairment that would render him incapable of reading, considering and understanding the terms of this Agreement, and is fully able to read, consider and understand the terms of this Agreement, all of which have been explained to him or, if necessary, translated to him in a language that he understands;

(b) He has signed this Agreement freely and voluntarily and without duress;

(c) No promise or representation of any kind or character, other than those contained in this Agreement, has been made by any of the Releasees or anyone acting on their behalf to induce him to enter into this Agreement;

(d) He is knowingly and voluntarily releasing all of the Releasees from any and all Released Claims he may have against any of them, in exchange for the consideration set forth in this Agreement and that he would not have otherwise been entitled to the consideration set forth in this Agreement if he did not sign this Agreement; and

(e) He was advised and hereby is advised to consider carefully the terms of this Agreement and consult with legal counsel prior to executing it, and has had a reasonable time in which to consider the terms of this Agreement before executing it.

11. **No Re-Entry To Premises:** It is expressly understood between the Parties that Plaintiff Ceron is not permitted to enter any of the Company's premises that is solely controlled by the Company, including the scrap yard and buildings located at 340 Maspeth Avenue, Brooklyn, NY 11211. Any such entry in violation of this paragraph shall be considered trespassing and will result in appropriate civil and/or criminal legal action, which the Parties agree shall not be considered retaliation.

12. **Full and Complete Agreement**: This Agreement constitutes the full and complete agreement between the Parties with respect to the issue of attorneys' fees and costs, and fully supersedes any and all prior agreements, commitments or understandings between the parties, pertaining to the subject matter hereof.

13. **Fair Meaning**: The language of all parts of this Agreement shall in all cases be construed as a whole according to its fair meaning, and not strictly for or against any of the Parties, regardless of who drafted it.

14. **Counterparts**: This Agreement may be executed in counterparts, each of which shall serve as an original as against any Party who signed it, and all of which taken together shall constitute one and the same document. A copy of a Party's signature on this Agreement shall be acceptable in any action against that Party to enforce this Agreement.

Orlando Ceron's Initials: *O.C.*

15. **Headings**: The headings in this Agreement are for the convenience of the Parties and are not intended to modify any of the terms of this Agreement.

16. **Facsimile**: A facsimile copy of this Agreement will have the same force and effect as the original.

17. **Notices**. All notices or communications under this Agreement shall be delivered by hand, registered mail, certified mail (return receipt requested), or overnight mail to the address of Defendants' Counsel or Plaintiff's Counsel, respectively, as follows:

Defendant's Counsel:

> Justin R. Marino, Esq.
> Littler Mendelson, P.C.
> 290 Broadhollow Road, Suite 305
> Melville, NY 11747

Plaintiff's Counsel:

> Sang J. "Peter" Sim, Esq.
> Park & Sim Global Law Group LLP
> 39-01 Main Street, Suite 608
> Flushing, New York 11354

Either Party may give notice of change of address in writing as set forth in this Paragraph. If registered or certified mail is used, actual delivery will be deemed to be the date set forth in the official U.S. Postal Service date stamp on the registered or certified mail receipt.

18. **Costs and Attorneys' Fees**. Except to the extent stated in Paragraph one (1) of the Agreement, each Party in this Action shall bear his own costs and attorneys' fees associated with prosecution, defense and disposition of the Action, as well as the negotiation and preparation of this Agreement. Notwithstanding anything else herein, the Parties and counsel for both Parties expressly agree that the amount and payment of attorneys' fees in this matter cannot be used or referenced for any purpose other than the enforcement of the payment referenced in Paragraph one (1) in this Action.

[Intentionally Omitted]

Orlando Ceron's Initials: *O.C*

BY SIGNING THIS AGREEMENT, PLAINTIFF ACKNOWLEDGES THAT HE HAS CAREFULLY READ THIS AGREEMENT, UNDERSTANDS IT, AND IS VOLUNTARILY ENTERING INTO IT OF HIS OWN FREE WILL, WITHOUT DURESS OR COERCION, AFTER DUE CONSIDERATION OF ITS TERMS AND CONDITIONS. PLAINTIFF IS ALSO ADVISED TO SPEAK WITH AN ATTORNEY BEFORE SIGNING THIS AGREEMENT.

**AGREED:**

T & T SCRAP, INC.

_____
Orlando Ceron

By: _____

Dated: _____

Dated: 6/1/16